Good morning, your honors, and may it please the court. My name is Robert Corp, B-E-R-K-E, for the defendant Juan Andres Santacruz. Your honors, this case has been largely affected at this point by the Attorney General's new decision, Silva-Tremino, which is cited in the government's 28-J letter. However, there's a couple of notes that need to be made about the application of Silva-Tremino. First, is that this case comes to this- Could you remind me of what the Attorney General has done? I'm not sure I'm thinking of the right thing. Oh, I apologize, your honor. The Attorney General wrote a decision in January, which essentially lays out a new framework. He doesn't call it a new framework, but he sets forth what he perceives to be the proper framework for immigration courts to analyze what is a crime involving moral turpitude and what is not. In doing that, he's made some, what I would call fairly fundamental changes, at least as that would come up within our circuit. Although he does sort of borrow a little- I know what you mean. Okay. Thanks. You're welcome, your honor. My colleagues may have more questions about it. Certainly. I thought what a crime of moral turpitude, crime involving moral turpitude was, had been told us by Jordan v. DeGeorge in 1951 by the Supreme Court. Does the Attorney General overrule that? Well, that actually comes into the second issue, really, that we have with Silva-Tremino, and that is to what extent can, does this Court need to defer to what the Attorney General has done there? Now, your honor, I agree that the Supreme Court, the Attorney General can't come in and reinterpret it unless, and in all fairness to the government, unless the Attorney General, unless the Supreme Court was making a finding based upon the fact that the administrative agency had left a hole that needed to be filled, in which case perhaps I'm- That wasn't so in Jordan v. DeGeorge. Yeah. Help me with the jurisdictional issue here. Sure. The case comes up on an appeal from what the judge called a partial summary judgment. Ordinarily, you would need 54B certification to get jurisdiction. I can't figure out what there is to decide after the partial summary judgment in this case. I can't figure out what's left. On the other hand, it says partial. And is there, do we have jurisdiction? I believe you do, and I've argued it, but to restate my opinion, I think that the use of the word partial, granting a partial summary judgment in the judge's order is sort of a mirror of the way the motion for summary judgment was originally framed by the government because they were seeking a partial summary judgment. That's what they entitled it. I don't really care how it came to be. It's just that you seek partial, it means no jurisdiction. Although, in effect, it's not partial because there was no place for us to go before the trial court at that juncture. It was done, wrapped up with a neat bow on it. So from my perspective, this is a final judgment. And, in fact, the order included give us your passport, give us your naturalization certificate. So at that point, we were pretty much done as far as the circuit court was concerned. Is there anything left to be done in district court? Well, that really sort of depends on where we go here. Now, the district court, in order to grant the summary judgment, and the fact that he granted it just based on count one of the complaint herein, is that in order to grant the summary judgment, the district court had to find that this is categorically defining a crime involving moral turpitude. If this Court were to say, and even I believe the Court could say, if I'll use Silva-Trimenio or 40 years of past precedent, that no, we need to look a little bit further, this may not, this categorically may not be a crime. Yes. There's no bearing on the question of whether we have jurisdiction. That would be a remand. Uh-huh. What I want to know is, as of now, is there anything left to be done in district  Oh, no. So if we dismiss for lack of jurisdiction, say, because we say it's a partial summary judgment, and send it back to district court to finish up the other two counts, but there's really nothing left to litigate, right? The district court gave the government everything that it asked for based on the first two counts or one of the counts. Is that right? That is correct, Your Honor. Okay. So it's final for all intents and purposes. Yes. So what it was really is three alternative theories for the same relief. If they got the relief on one of them, no need to adjudicate the other two. I wish I had articulated it so well, Your Honor. Yes. Okay. Now, on the crime of moral turpitude, we have a case pending about drunk driving, and I happen to remember there was a case, I think it was called Lopez Mesa, where the BIA in a precedential decision said Sienta is enough to make it a crime with moral turpitude. And this case involves Sienta, though no evil intent or willfulness, and I wonder why it wouldn't be covered by that. Well, again, that's sort of why I think we do need factual findings made in the district court. The Sienta requirement on the statute at bar here is to knowingly possess. Even knowingly, I don't see why you'd need, why that wouldn't be categorical if Sienta is all it takes. Well, I would like, well, because the Sienta isn't to do something evil. In other words, the Sienta here is that same willfulness, and it's another place where the Attorney General's decision has to cause some concern, because if we were to have a willfulness, for example, somebody can say I'm a newspaper reporter and I'm studying the child pornography industry so I can write an expose, and I knowingly possess a bunch of images, he's guilty. That's correct, Your Honor. And I think that's my point, because there's a case where even with the Sienta, the moral turpitude wouldn't adhere. With that low level of Sienta, the knowing possession. Why wouldn't it? It wouldn't adhere because it doesn't meet that very old definition. First of all, the Attorney General's decision causes that. Look, I can't make any sense, frankly, of the cases. I look at the cases on moral turpitude, and it seems to be whatever gets the judges all steamed up. The only commonality I can find is dishonesty and sex. My perspective on it, Your Honor, is there are two definitions, element of fraud we don't have here, base vile contrary to the morals of society, et cetera. So we have to say, or my perspective is we have to look at the statute and say, can this statute be violated by engaging in conduct which isn't base vile and contrary to the morals of society? And Your Honor provided me with a wonderful example of that. You know, when it's knowingly possessing, there's no exemption for academic study, there's no exemption for law enforcement, there's no exemption. I'm sorry, Your Honor. Now, Duenas-Alfarez says we don't have to dream up these hypothetical possibilities. I guess I'm still wondering why we're not deferring to the BIA and its interpretation of its of the statute that it's implementing. There are a couple of reasons for that, Your Honor. The first and foremost is because I actually believe that we can knock this out of the moral turpitude category on a, really on a categorical approach, because that element requiring baseless violence, et cetera, is not in the statute. Under Duenas-Alfarez, it doesn't fit the categorical approach unless there's some indication that, to take Judge Kleinfeld's hypothetical, there are prosecutions of journalists or academicians who are studying child pornography, right? So the hypothetical that it could be prosecuted is, the Supreme Court tells us, not enough, right? But that would have been a factual finding that would have been made, I think, at the district court level, whether this is a mere hypothetical or whether there's a reasonable possibility that it could actually be prosecuted this way. Well, but the finding of the district court that it was a crime involving moral turpitude implies, under Duenas-Alfarez's case, that only knowingly for personal use possession is prosecuted, not the journalist, not the academician. That's, unfortunately, unfortunately for me, wasn't consistent with my read of the Court's decision, who I really was. It wasn't considered at all by the Court. Exactly. Duenas-Alfarez wasn't considered. This hypothetical was not considered by the Court. Right. But there is no evidence that academicians and journalists are prosecuted for knowing possession of child pornography. You don't have a case, in other words. No, I do not. No. Why wouldn't we defer to the AG's opinion in Silva-Trovino that Sienter's enough? Well, the AG in Silva-Trovino lists four categories of Sienter. I'm trying to recite them from memory, but recklessness is one specific intent. Obviously, I recall recklessness being in there. But he lists four categories, and I did note that knowingly was not one of those four categories. Two other reasons. One, the Attorney General, and I can actually defer to the case of Nicanor Romero, which is also in the 28J letter. The Attorney General isn't necessarily entitled to deference when it comes to looking at a statute that's not within his realm to administer. So whether a particular offense contains certain elements or requires certain layoffs to be done, there's no deference there. Whether his definition of moral turpitude needs to be deferred to, I'm on much weaker ground. But whether he says, as a matter of law, this is a statute that inheres moral turpitude, that's your domain, in my opinion, not the Attorney General's, and no deference would necessarily be deserved. Thank you, counsel. Thank you, Your Honor. I'd like to reserve the rest for everybody. Thank you. You went over. Oh, it's over. You explained that. I'm sorry. Thank you. Good morning, Your Honors. May it please the Court. My name is Teresa Healy. I'm here on behalf of the government from the Office of Immigration Litigation. Could you help us with jurisdiction? Is this partial summary judgment? Partial? No, Your Honor. What it was, was asking for summary judgment on one count listed in the complaint. And when the Court granted summary judgment on that one count, it disposed of all issues in the case. It resulted in the revocation of Mr. Santa Cruz's citizenship. Is there anything left to do in district court? No, there is not. His citizenship has been revoked, and that is the full – that's completely what the government was asking for. If your adversary had not appealed, would there be any occasion to litigate the other grounds that the government urged for revoking naturalization? No, there would not. It would have been a final order, and the government would not have appealed the other grounds under which it brought the denaturalization action. So even though – I think you might have given this form to the judge. Maybe not. I guess I don't see the government's name on the stationery. Even though it says partial, it isn't? That's correct. What it was, was asking for summary judgment based on the single count. And there were three different causes of action in the case. All were asking for the same result, which was to revoke the citizenship of Mr. Santa Cruz. I think you called them counts in the complaint, as though it were a criminal complaint. Yes. They were called counts, even though this is a civil action. A denaturalization action under 8 U.S.C. 1451a is a civil action. But we did call counts. Could you speak to the argument made by your adversary that we should not defer because administration of this statute was not committed to the attorney general? Your Honor, that's – the government takes the opposite position, that the INA is governed by the attorney general. It is within his domain. And the moral turpitude term in the statute up until this point was – has been quite nebulously interpreted and unclear. And so the AG does have the authority and the jurisdiction to clarify that portion of the statute, and he did so recently in the Silva-Truvino case. And under the Supreme Court's decision in Grand X – Justice Department or the Department of Homeland Security? It is in the – lies with the Justice Department. The AG does have the authority to administer the statute. The immigration court is located in the Justice Department, and he does have authority over the statute. I can never remember, because it's new, what's in the DHS. That's a separate cabinet department. That's why I'm asking. Because I remember the Supreme Court said you defer to an administrative interpretation when the application of that statute is committed to that department. But even though the Department of Homeland Security has enforcement power over the immigration laws, the attorney general retained the authority to administer the INA and has the authority over the INA. How would we confirm that? Is there a statutory provision that sets that forward? I believe I can submit that under a separate letter following this hearing, Your Honors. Don't do it unless we ask for it. Yes. In this particular case, Mr. Santa Cruz was – entered a plea agreement, and in his knowingly possessed 63 images of child pornography, and that some of the images involved children who were under the age of 12 years old, and that these – many of these images were manufactured overseas and were not images of himself as a child. Knowing possession of child pornography in and of itself is reprehensible. Child pornography is offensive to society. It's an affront to children. It constitutes abuse of – child abuse. Do you have another circuit court opinion that says it's a crime of moral turpitude? I do not have another circuit court opinion. However, I do have the BIA's opinion in Olkein-Rufino, which the – which involved the Florida State statute. The elements of the Florida State statute are very similar to the Federal statute at issue in this case. Basically, in Florida, the crime involved knowingly possessing sexually explicit material of children, which is exactly what Mr. Santa Cruz pled guilty to and was convicted for in the instant case. And in that case, the Board found that because child pornography is such an affront to children and is so morally reprehensible, that just the mere knowing possession of it is morally turpitudinous. You have a Board of Immigration Appeals case in 2006 holding directly on point Olkein-Rufino. Yes. Right? Yes, Your Honor. And I'm – And there are some State law cases that hold that possession of child pornography is a crime involving moral turpitude, right? Right. That's correct. And it's the government's position that under Silva-Trevino and the Ninth Circuit's other recent opinion in Hanna or Romero, that under the analysis that's been added of the realistic probability test, that this offense is a crime involving moral turpitude. We've run out of steam. And we've read the briefs. If you have other points to make, you've got three and a half minutes to make them. I guess the only other point I'd like to make, Your Honor, is that in Econor, the Ninth required, in order for a crime to have moral turpitude, said that you need to look at the consequence of the crime. And in this particular case, the consequence of child pornography is grave and very dangerous. You know, any picture of child pornography is a permanent record of sexual abuse. And so this is specifically the type of crime where you don't need specific intent, that a knowing, a scienter of knowing is sufficient enough to meet the moral turpitude threshold. Thank you. Argument submitted. Thank you, Counsel. United States v. Santa Cruz is submitted. Thank you. Thank you, Counsel.
judges: Kleinfeld, Bea, Ikuta